1   IN THE UNITED STATES DISTRICT COURT
2
3   EASTERN DISTRICT OF CALIFORNIA
4
5   CLIFFORD M. ANDERSON,          )    2:16-CV-01783 LEK
6   MARLENE J. ANDERSON,           )
7                                  )
8              Plaintiffs,         )
9                                  )
10      vs.                        )
11                                 )
12  WELLS FARGO HOME MORTGAGE;     )
13  and BARRETT DAFFIN, FRAPPIER,  )
14  TREDER & WEISS, LLP,           )
15                                 )
16             Defendants.         )
17  _____ )


18
19          **ORDER GRANTING IN PART AND DENYING**
20          **IN PART DEFENDANT'S MOTION TO DISMISS**
21
22          Before the Court is Defendant Wells Fargo Home

23  Mortgage's, doing business as America's Servicing Company ("Wells

24  Fargo" or "Defendant"), Motion to Dismiss ("Motion"), filed on

25  August 3, 2016.[1]  [Dkt. no. 4.]  Plaintiffs Clifford M. Anderson

26  and Marlene J. Anderson ("Plaintiffs") filed a memorandum in

27  opposition on August 18, 2016, and Defendant filed its reply on

28  September 1, 2016.  [Dkt. nos. 6, 8.]  The Court finds this

29  matter suitable for disposition without a hearing pursuant to

30  Rule LR230(g) of the Local Rules of Practice of the United States

31  District Court for the Eastern District of California ("Local

---

32          [1] The Motion states that Defendant is actually Wells Fargo
33  Bank, N.A., and was "erroneously sued as Wells Fargo Home
34  Mortgage d/b/a America's Servicing Company."  [Motion at 1.]
35  Defendant has not moved to alter or correct its name in the
36  docket, and the Court will therefore refer to Defendant as its
37  name appears in this district court's electronic case filing
38  system.

Rules").  Defendant's Motion is granted in part and denied in part for the reasons set forth below.

**BACKGROUND**

Plaintiffs filed their Complaint for Damages and Equitable Relief ("Complaint") in the Superior Court of California in and for the County of Nevada on June 15, 2016, and Defendant removed the Complaint on July 29, 2016.  [Notice of Removal, filed 7/29/16 (dkt. no. 1), Exh. A (Complaint).]  Plaintiffs are residents of and owners of a property in Nevada City, California ("the Property").  [Complaint at ¶¶ 1-3.]

Plaintiffs allege that Defendant is involved in a scheme that fraudulently conceals mortgage-default-related fee income.  [Id. at ¶ 23.]  According to Plaintiffs:

> Defendants[2] order default-related services from
> their subsidiaries and affiliated companies, who,
> in turn, obtain the services from third-party
> vendors.  The third-party vendors charge
> Defendants for their services.  Defendants, in
> turn, charge borrowers a fee that is significantly
> marked-up from the third-party vendors' actual
> fees for the services.  As a result, even though
> the mortgage market has collapsed, and more and
> more borrowers are following into delinquency,
> Defendants continue to earn substantial profits by
> assessing undisclosed, marked-up fees for default-
> related services on borrowers' accounts.

[Id. at ¶ 24.]  Plaintiffs argue that mortgage contracts do not allow a mortgage servicer to mark up the costs of default-related

---

[2] Barrett, Daffin, Frappier, Treder, & Weiss, LLP ("Barrett Daffin") is also named as a defendant, but Plaintiffs apparently have not completed service on Barrett Daffin.

services in order to make a profit. [<u>Id.</u> at ¶ 27.] Moreover,

Plaintiffs submit that these default-related fees are not

disclosed to the borrowers. [<u>Id.</u> at ¶ 29.] "[T]he assessment of

these marked-up fees can make it impossible for borrowers to

become current on their loan." [<u>Id.</u> at ¶ 33.]

In the instant matter, Plaintiffs state that they

obtained a $1,072,000 loan to purchase the Property, secured by

the Deed of Trust to the Property. [<u>Id.</u> at ¶ 38.] Due to

changes in their financial situation, Plaintiffs fell behind on

their loan payments, and, on July 18, 2012, Defendant recorded a

Notice of Default. [<u>Id.</u> at ¶ 39.] According to Plaintiffs, due

to their financial hardship, they applied for a loan modification

on May 5, 2015. [<u>Id.</u> at ¶ 45.] Plaintiffs state that, on

August 27, 2015, they submitted six requests for information

("8/27/15 Requests"), pursuant to 12 C.F.R. § 1024.36

("Regulation X") of the Real Estate Settlement Procedures Act

("RESPA") and 12 C.F.R. § 1026.36 ("Regulation Z") of the Truth

in Lending Act ("TILA").[3] [<u>Id.</u> at ¶ 46.] Plaintiffs also allege

that Defendant's response to the 8/27/15 Requests was untimely,

---

[3] The Complaint states that the requests were sent on
August 27, 2016, although it subsequently states that the
requests were sent in 2015. <u>Compare</u> Complaint at ¶ 46, <u>with</u>
<u>id.</u> at ¶ 56. Defendant also states that the 8/27/15 Requests
were sent in 2016. <u>See</u> Mem. in Supp. of Motion at 2 ("Plaintiffs
allegedly mailed six letters to Wells Fargo, all dated August 27,
2016." (citation omitted)). Given the filing date of the
Complaint, any reference to 2016 with respect to the 8/27/15
Requests is clearly an oversight.

pursuant to § 1024.36(c). [Id. at ¶ 47.] On December 7, 2015, Plaintiffs sent Defendant six Notices of Error ("12/7/15 Notices"), pursuant to 12 C.F.R. § 1024.35. Plaintiffs assert that Defendant has not adequately responded to the 12/7/15 Notices. [Id. at ¶¶ 47-48.] Defendant recorded a Notice of Trustee's Sale on May 18, 2016. [Id. at ¶ 49.]

Plaintiffs allege that Defendant's failure to respond to the 8/27/15 Requests in a timely fashion, and its failure to sufficiently respond to the 12/7/15 Notices, are violations of Regulation X and Regulation Z ("Count I"). [Id. at ¶¶ 50-81.] Plaintiffs also allege that Defendant's actions violated Cal. Bus. & Prof. Code § 17200, *et seq.* ("Count II"). [Id. at ¶¶ 82-96.] Plaintiffs seek: an order rescinding the Trustee's Sale; an order vacating and setting aside the foreclosure sale, and an order rescinding that sale; damages that resulted from Defendant's actions; "disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful"; interest; punitive damages; relief under Cal. Civil Code § 2924.12(b); attorneys' fees and costs and any other relief under Cal. Civil Code § 2923.12(i); injunctive relief; and any other relief the Court believes to be appropriate. [Id. at Prayer for Relief ¶¶ 1-10.]

//

**DISCUSSION**

## I.   Request for Judicial Notice

On August 3, 2016, Defendant filed a Request for Judicial Notice in Support of Motion to Dismiss ("Request"), and Plaintiffs filed an objection on August 18, 2016. [Dkt. nos. 5, 7.] The Request seeks judicial notice of the United States Postal Service ("Postal Service") tracking information for the 12/7/15 Notices. [Request at 1-2.] Plaintiffs oppose the Request "because it is unfairly prejudicial to Plaintiffs, contains hearsay statements, and is improper documentary evidence which lacks foundation." [Objection at 2.] Another district court in the Ninth Circuit has considered whether or not a court may take judicial notice of the Postal Service's tracking information:

> The Court generally cannot consider materials other than the complaint when ruling on a motion to dismiss under [Fed. R. Civ. P.] 12(b)(6), but a court may take judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); see also Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (providing that courts may also take judicial notice of materials that are included as part of the complaint or relied upon by the complaint). Where a party submission satisfies any of these requirements, the court "**must** take judicial notice if a party requests it and supplies the court with the necessary information." Fed. R. Evid. 201(c)(2) (emphasis added).

> These submissions are appropriate for
> judicial notice as matters in the public record or
> sources whose accuracy cannot reasonably be
> questioned.  See Marder, 450 F.3d at 448.

Whiting v. United States, Case No.: CV 15-01472-AB (DTBx), 2016 WL 3946920, at *2-3 (C.D. Cal. June 21, 2016).  The Court notes that, here, Plaintiffs include the tracking numbers for each of the 12/7/15 Notices.  See Complaint at ¶¶ 68-73 (describing each of the 12/7/15 Notices, including the Postal Service tracking numbers).  The Court concludes that the tracking information for the 12/7/15 Notices provide facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," see Whiting, 2016 WL 3946920, at *3 (citation omitted), and Defendant's Request is therefore granted.

## II.  **Count I – Violation of Regulation X and Regulation Z**

### A.  **Timeliness of Defendant's Responses to the 8/27/15 Requests and the 12/7/15 Notices**

Regulation X requires that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request."  § 1024.36(c).  If a request for information concerns the "identity of, and address or other relevant contact information for, the owner and assignee of a mortgage loan," the loan servicer must respond to

6

the request within ten days. § 1024.36(d)(2)(i)(A). "For all
other requests for information," a servicer must respond within
thirty days. § 1024.36(d)(2)(i)(B). Finally, the requirements
of Regulation X are not applicable to "information request[s that
are] overbroad or unduly burdensome." § 1024.36(f)(1)(iv).

While Plaintiffs appear to argue that Defendant's
acknowledgment of the 8/27/15 Requests was untimely, their
argument defies common sense. On a motion to dismiss, "[t]he
Court must accept well-pled factual allegations as true and draw
all reasonable inferences in favor of the non-moving party."
Herrera v. Cal. Dep't of Corr. & Rehabs., 1:16-cv-01053-DAD-SKO
(PC), 2017 WL 117861, at *1 (E.D. Cal. Jan. 12, 2017) (some
citations omitted) (citing Daniels-Hall v. National Educ. Ass'n,
629 F.3d 992, 998 (9th Cir. 2010)).[4] However, "[t]o survive a
motion to dismiss, a complaint must contain sufficient factual
allegations, accepted as true, to state a claim that is plausible
on its face." Id. (some citations omitted) (citing Ashcroft v.
Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). First,
Defendant states that it received the 8/27/15 Requests on
August 31, 2015, and acknowledged receipt the same day ("8/31/15
Acknowledgment"). [Mem. in Supp. of Motion at 4.] Plaintiffs
allege that they did not receive the 8/31/15 Acknowledgment until

_____

[4] 2017 WL 117861 is the magistrate judge's findings and
recommendation, which was adopted on April 20, 2017. [Herrera,
dkt. no. 21.]

7

September 5, 2015, although it was backdated to August 31, 2015.[5]
See Complaint at ¶ 47; id. at pg. 85 (Exh. F (8/31/15
Acknowledgment)).[6]  Plaintiffs sent the 8/27/15 Requests from
California to Des Moines, Iowa.  [Id. at ¶ 57.]  Thus, Plaintiffs
challenge Defendant's contention that it took the 8/27/15
Requests a day or two to arrive in Iowa, and that it took a day
or two for the 8/31/15 Acknowledgment to reach California.  In
addition, over the course of the nine days in question, there was

---

[5] Fed. R. Civ. P. 12(d) states, in relevant part, that
"[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside
the pleadings are presented to and not excluded by the court, the
motion must be treated as one for summary judgment under [Fed. R.
Civ. P.] 56."  However, there are two exceptions:

> First, a court may consider "material which is
> properly submitted as part of the compliant" on a
> motion to dismiss without converting the motion to
> dismiss into a motion for summary judgment.
> Branch [v. Tunnell], 14 F.3d [449,] 453 [(9th Cir.
> 1994)] (citation omitted).  If the documents are
> not physically attached to the complaint, they may
> be considered if the documents' "authenticity
> . . . is not contested" and "the plaintiff's
> complaint necessarily relies" on them.  Parrino v.
> FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998).
> Second, under Fed. R. Evid. 201, a court may take
> judicial notice of "matters of public record."
> Mack v. South Bay Beer Distrib., 798 F.2d 1279,
> 1282 (9th Cir. 1986).

Malifrando v. Real Time Resolutions, Inc., No. 2:16-cv-0223 TLN
GGH PS, 2016 WL 6955050, at *3 (E.D. Cal. Nov. 29, 2016) (some
alterations in Malifrando) (quoting Lee v. City of Los Angeles,
250 F.3d 668, 688-89 (9th Cir. 2001)).

[6] There are over a hundred pages of exhibits attached to the
Complaint, most of which are not consecutively paginated.  The
Court will therefore refer to the page numbers assigned by this
district court's electronic filing system.

1    at least one weekend.  Finally, § 1024.35(c) gives Defendant five

2    days from "receiving an information request from a borrower," and

3    not five days from the day that a request is sent.  Plaintiffs'

4    argument that Defendant's response to the 8/27/15 Requests was

5    untimely is simply implausible.  Accordingly, to the extent that

6    Count I is based upon this argument, it must be dismissed.

7         It is unclear whether or not Plaintiffs argue that the

8    responses to the 12/7/15 Notices were untimely, but this claim

9    also fails.  In response to the 12/7/15 Notices, Defendant sent

10   an acknowledgment, dated December 11, 2015 ("12/11/15

11   Acknowledgment").  [Complaint at pg. 112 (Exh. I).]  While the

12   12/11/15 Acknowledgment includes a stamp stating that it was

13   received on December 19, 2015, the tracking numbers provided by

14   Plaintiffs in the Complaint show otherwise.  <u>See</u> Request, Exh. A

15   (showing that all of the 12/7/15 Notices were delivered on

16   December 11, 2015).  Any claim regarding the failure of Defendant

17   to timely acknowledge the 12/7/15 Notices must also be dismissed.

18        **B.   The Sufficiency of Defendant's Response**

19             **1.   Regulation X**

20        Plaintiffs state the following regarding the 8/27/15

21   Requests:

22   - the first request ("First Request") sought "a payoff statement
23        as well as an itemized payoff statement for the mortgage
24        loan"; [Complaint at ¶ 58;]
25
26   //

9

- the second request ("Second Request") sought "the promissory note for the Loan or other evidence of indebtedness, the deed of trust, any assignment of information demonstrating the right to foreclose, and payment history since the borrower was less than 60 days past due"; [<u>id.</u> at ¶ 59;]

- the third request ("Third Request") sought "information regarding its participation in and the type and availability of loans under . . . loan modification programs"; [<u>id.</u> at ¶ 60;]

- the fourth request ("Fourth Request") sought "a complete life-of-loan loan history and a complete statement of the amount the borrower must pay to cure any default"; [<u>id.</u> at ¶ 61;]

- the fifth request ("Fifth Request") sought "the full names and addresses of the owner, investor, master servicer, current servicer, special information if Fannie Mae or Freddy Mac is the investor, and property valuation information"; [<u>id.</u> at ¶ 62;] and

- the sixth request ("Sixth Request") sought "the servicing file as well as sections of the [Pooling and Service Agreement ("PSA")] [<u>id.</u> at ¶ 63].

In a letter dated October 13, 2015 ("10/13/15 Letter"), Defendant responded to the 8/27/15 Requests by sending Plaintiffs' attorney a copy of the note ("Note"), security instrument ("Security Instrument"), and payment history ("Payment History"). <u>See</u> <u>id.</u>, Exh. J at pgs. 116-17 (10/13/15 Letter), 118-45 (Note and Security Instrument), 146-53 (Payment History). Defendant also informed Plaintiffs: about the origin of their account; the status of their account; and that it was "unable to provide any further information because your remaining requests are too broad." [10/13/15 Letter at 1-2.] The 12/7/15 Notices informed Defendant that Plaintiffs believed it erred in its response to the 8/27/15 Requests. [Complaint at ¶¶ 68-73.]

1  Defendant responded to the 12/7/15 Notices in a letter dated

2  December 21, 2015 ("12/21/15 Letter"), wherein it:  re-sent a

3  copy of the 10/13/15 Letter and attachments; and informed

4  Plaintiffs again that it was "unable to provide any further

5  information because your remaining requests are too broad.  If

6  you'd like to provide us with more specific details about what

7  you're seeking, we'll review your request again."  [Id., Exh. J

8  at pgs. 114-15.]

9          Defendant argues that its response to both the 8/27/15

10  Requests and the 12/7/15 Notices was sufficient pursuant to

11  § 1024.35.  [Mem. in Supp. of Motion at 4-5.]  Plaintiffs counter

12  that, "[e]ven if the explanation were adequate, the issue here is

13  that no such explanation was provided in Wells Fargo's response

14  to the" 12/7/15 Notices.  [Mem. in Opp. at 7.]  Section 1024.35

15  states, in relevant part that, in response to a notice of error,

16  a servicer must correct the errors and provide notice of the

17  corrections, or

18          [c]onduct[] a reasonable investigation and
19          provid[e] the borrower with a written notification
20          that includes a statement that the servicer has
21          determined that no error occurred, a statement of
22          the reason or reasons for this determination, a
23          statement of the borrower's right to request
24          documents relied upon by the servicer in reaching
25          its determination, information regarding how the
26          borrower can request such documents, and contact
27          information, including a telephone number for
28          further assistance.
29
30  § 1024.35(e)(1)(i)(A)-(B).  The regulation also states, "[a]

11

1 notice is overbroad if the servicer cannot reasonably determine

2 from the notice of error the specific error that the borrower

3 asserts has occurred on a borrower's account."

4 § 1024.35(g)(1)(ii).

5       Other district courts in the Ninth Circuit have

6 reasoned:

> While RESPA "provides plaintiffs with a
> private right of action for . . . the failure by a
> loan servicer . . . to respond to a [Qualified
> Written Request ("QWR")] for information about a
> loan," Gomes v. Wells Fargo Home Mortg., No. C 11-
> 01725 LB, 2011 WL 5834949, at *3 (N.D. Cal.
> Nov. 21, 2011) (internal quotation marks omitted),
> it does not require loan servicers to respond when
> they "reasonably determine" that a request is
> overbroad or unduly burdensome, see 12 C.F.R.
> § 1024.36(f). "An information request is
> overbroad if a borrower requests that the servicer
> provide an unreasonable volume of documents or
> information to a borrower." Id.
> § 1024.36(f)(1)(iv).
>
> Plaintiffs attached the relevant QWR to their
> complaint. It consists of 18 single-spaced pages
> of legal arguments and requests for documents and
> responses, including several questions amounting
> to requests for a "complete life of loan
> transactional history," which courts in this
> circuit have found overbroad. See also Derusseau
> v. Bank of Am., N.A., 2011 WL 5975821, at *4 (S.D.
> Cal. Nov. 29, 2011) (finding a QWR overly broad
> where it "request[ed] a 'complete life of loan
> transactional history,' the 'Transaction Codes for
> the software platform of the Servicer,' and the
> 'Key Loan Transaction history, bankruptcy work
> sheet (if any), or any summary of all the accounts
> in an XL spreadsheet format.'"); Junger v. Bank of
> America, N.A., No. CV 11-10419 CAS (VBKx), 2012 WL
> 603262, at *5 (C.D. Cal. Jan. 24, 2012). . . .
>
> However, "[t]o the extent a servicer can
> reasonably identify a valid information request in

a submission that is otherwise overbroad or unduly
burdensome, the servicer shall comply with the
requirements of paragraphs (c) and (d) of [that]
section with respect to that requested
information." 12 C.F.R. § 1024.36(f)(1)(iv). In
this regard, while Plaintiffs allege that Wells
Fargo could have attempted to answer some of their
questions rather than relying on "[t]he flat
assertion . . . that every single one of [their]
detailed questions [was] somehow too broad," they
nevertheless fail to identify any specific
questions they reasonably could have expected
Wells Fargo to answer, or additional documents
that Wells Fargo should have produced, in response
to an appropriately scoped and specific QWR. <u>See
also</u> 12 C.F.R. § 1024.36(f)(1)(iv), Supplement I
to Part 1024 – Official Bureau Interpretations,
comment 36(f)(1)(iv), "Examples of Overbroad or
Unduly Burdensome Requests for Information," as
published in 78 FR 10695 (Feb. 14, 2013) (stating
that requests for information (1) "that seek
documents relating to substantially all aspects of
mortgage origination, mortgage servicing, mortgage
sale or securitization, and foreclosure"; (2) "are
not reasonably understandable or are included with
voluminous tangential discussion"; (3) ["]purport
to require servicers to provide information in
specific formats . . . when such information is
not ordinarily stored in such formats"; and
(4) ["]are not reasonably likely to assist a
borrower with the borrower's account, including,
for example, a request for copies of the front and
back of all physical payment instruments," are
overbroad or unduly burdensome). Because
(1) Plaintiffs' facially overbroad requests sought
a broad range of documents that went well beyond
the limited subject matter of a valid QWR,
(2) Wells Fargo provided Plaintiffs with a copy of
their promissory note in response to the QWRs, and
(3) the complaint lacks any specificity as to what
in particular was insufficient about Wells Fargo's
response, the Court grants Defendants' motion to
dismiss Plaintiffs' RESPA and Regulation X claims.
<u>See</u> <u>Menashe v. Bank of New York</u>, 850 Fed. Supp. 2d
1120, 1132 (D. Haw. 2012). . . .

<u>Brewer v. Wells Fargo Bank, N.A.</u>, Case No. 16-cv-02664-HSG, 2017

13

WL 1315579, at *4-5 (N.D. Cal. Apr. 6., 2017) (some alterations
in <u>Brewer</u>) (emphasis and some citations omitted).  In addition:

> Servicing, as defined under RESPA, "does not
> include the transactions and circumstances
> surrounding a loan's origination – facts that
> would be relevant to a challenge to the validity
> of an underlying debt or the terms of a loan
> agreement.  Such events precede the servicer's
> role in receiving the borrower's payments and
> making payments to the borrower's creditors."
> <u>Medrano v. Flagstar Bank, FSB</u>, 704 F.3d 661, 666-
> 67 (9th Cir. 2012).  In <u>Medrano</u>, the Ninth Circuit
> upheld the dismissal of the RESPA claim for
> failing to properly request servicing information
> where the letters from the borrowers to servicer
> challenged terms of the loan and mortgage
> documents, and the failure of loan documents to
> "accurately reflect the proper payment schedule
> represented by the loan broker".  <u>Id.</u> at 667.
> Under these facts, the court found no duty to
> respond to the request.  <u>Id.</u>  Therefore, requests
> for documents and information "relating to the
> original loan transaction and its subsequent
> history" do not qualify as QWRs.  <u>Junod v. Dream
> House Mortg. Co.</u>, No. CV 11-7035-ODW(VBKx), 2012
> WL 94355, at *4 (C.D. Cal. Jan. 5, 2012); <u>see also</u>
> <u>Consumer Solutions REO, LLC v. Hillery</u>, 658 F.
> Supp. 2d 1002, 1014 (N.D. Cal. 2009) (dismissing
> plaintiff's RESPA claim with prejudice after
> observing that the requirement "[t]hat a QWR must
> address the servicing of the loan, and not its
> validity, is borne out by the fact that [12
> U.S.C.] § 2605(e) expressly imposes a duty upon
> the loan servicer, and not the owner of the
> loan.").  In addition, requests relating to loan
> modification are not related to "servicing" of the
> loan.  <u>Smallwood v. Bank of America, N.A.</u>, Case
> No. 15cv336, 2015 WL 7736876, at *6 (S.D. Ohio,
> Dec. 1, 2015) (citing "<u>Mbakpuo v. Civil Wells
> Fargo Bank, N.A.</u>, No. 13-2213, 2015 WL 4485504, at
> *8 (D. Md. July 21, 2015) (request for a loan
> modification did not relate to servicing of a
> loan); <u>Mayer v. EMC Morg. Corp.</u>, No. 2:11-cv-147,
> 2014 WL 1607443, at *5-6 (N.D. Ind. Apr. 22, 2014)
> (same); <u>Van Egmond v. Wells Fargo Home Mortg.</u>, No.
> 12-0112, 2012 WL 1033281, at *4 (C.D. Cal Mar. 21,

2012) (RESPA only obligates loan services to
respond to borrowers' requests for information
relating to servicing of their loans, which does
not include loan modification information)");
<u>Mobine v. OneWest Bank, FSB</u>, 11cv2550-IEG(BGS),
2012 WL 1520116, at *2 (S.D. Cal. Apr. 27, 2012)
(same).

<u>Watson v. Bank of Am., N.A.</u>, CASE NO. 16cv513-GPC(MDD), 2016 WL
6581846, at *6 (S.D. Cal. Nov. 7, 2016) (some alterations in
<u>Watson</u>).

Here:  Plaintiffs' own descriptions of the 8/27/15
Requests reveal that they are facially overbroad and go well
beyond the proper subject matter for QWRs; the 10/13/15 Letter
provided Plaintiffs with the Note, Security Instrument, and
Payment History; and "the complaint lacks any specificity as to
what in particular was insufficient about Wells Fargo's
response," <u>see</u> <u>Brewer</u>, 2017 WL 1315579, at *5 (citation omitted).
The Motion, insofar as it seeks dismissal of the Regulation X
claims, is granted.  However, the dismissal of this claim is
without prejudice.  <u>See</u> <u>McCliss v. Ward</u>, No. 2:07-cv-01154-MCE-
KJM, 2008 WL 3373821, at *3 (E.D. Cal. Aug. 8, 2008) ("A court
may determine that amendment of a complaint is futile, and
dismiss a claim with prejudice, if the pleadings could not
possibly be cured by the allegation of other facts." (some
citations omitted) (citing <u>Cook, Perkiss and Liehe, Inc. v.</u>

15

N. Cal. Collection Serv., Inc., 911 F.2d 242, 246-47 (9th Cir. 1990))).[7]

## 2. **Violation of Regulation Z**

The Complaint states that it also seeks to enforce "amended Regulation Z, Section 1026.36." [Complaint at ¶ 51.] This district court has stated:

> Plaintiff is required to establish standing for each claim he asserts. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006). If a plaintiff has no standing, the court has no subject matter jurisdiction. Nat'l Widlife Fed'n v. Adams, 629 F.2d 587, 593 n.11 (9th Cir. 1980) ("[B]efore reaching a decision on the merits we [are required to] address the standing issue to determine if we have jurisdiction."). There are three requirements that must be met for a plaintiff to have standing: (1) the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is both concrete and particularized and actual or imminent; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Wash. Legal Found. v. Legal Found. of Wash., 271 F.3d 835, 847 (9th Cir. 2001) (en banc).

Weston v. Kelso, No. 2:17-cv-0384 CKD P, 2017 WL 1354574, at *2 (E.D. Cal. Apr. 13, 2007) (alterations in Weston).

//

---

[7] While not necessary in ruling on the instant Motion, the Court notes that, if Plaintiffs file an amended complaint, it "should explicitly plead facts that could support a finding that Plaintiffs suffered causal damages arising from Defendants' failure to respond to their QWRs within the allotted time frame, as required by RESPA." See Brewer, 2017 WL 1315579, at *5 n.5 (citing Lawthner v. Onewest Bank, 2010 WL 4936797, at *7 (N.D. Cal. Nov. 30, 2010)).

1      With specific regard to Regulation Z, this district

2 court has explained:

3           TILA was enacted "to assure a meaningful
4           disclosure of credit terms" so the consumer can
5           "compare . . . the various credit terms available
6           to him and avoid the uniformed use of credit," and
7           to "protect the consumer against inaccurate and
8           unfair credit billing and credit card practices."
9           15 U.S.C. § 1601(a).  To effectuate this remedial
10          purpose, courts "construe the Act's provisions
11          liberally in favor of the consumer." Haulk v. JP
12          Morgan Chase Bank USA, 552 F.3d 1114, 1118 (9th
13          Cir. 2009) (internal quotation marks and citations
14          omitted).
15
16          To the extent relevant here, TILA provides
17          "[a] creditor or servicer of a home loan shall
18          send an accurate payoff balance within a
19          reasonable time, but in no case more than 7
20          business days, after the receipt of a written
21          request for such balance from or on behalf of the
22          borrower." 15 U.S.C. § 1639g.  Regulation Z,
23          which implements TILA, provides in relevant part,
24          "a creditor, assignee or servicer, as applicable,
25          must provide an accurate statement of the total
26          outstanding balance that would be required to pay
27          the consumer's obligation in full as of a
28          specified date." 12 C.F.R. § 1026.36(c)(3).  The
29          Federal Consumer Financial Protection Bureau is
30          responsible for enforcing Regulation Z, and has
31          explained "payoff statements should be issued
32          according to the best information available at the
33          time." 78 Fed. Reg. 10902 (Feb. 14, 2013).
34
35 Jamison v. Bank of Am., N.A., No. 2:16-cv-00422-KJM-AC, 2017 WL

36 3394120, at *3 (E.D. Cal. Aug. 8, 2017) (alterations in Jamison).

37      Moreover,

38          a procedural violation of the TILA requirements
39          for payoff statements does not inherently
40          establish concrete harm. . . . [T]he TILA
41          provision at issue here regulates only the
42          provision of certain information on the payoff
43          statement. See 15 U.S.C. § 1639g; 12 C.F.R.

```
 1          § 1026.36(c)(3).  A procedural violation of the
 2          TILA provision may result in no concrete harm if
 3          the lender provides the omitted information
 4          through other means.  Cf. Spokeo[, Inc.] v.
 5          Robbins, 136 S. Ct. [1540,] 1550 [(2016)]
 6          (". . . [N]ot all inaccuracies cause harm or
 7          present a material risk to harm.").  Here, the
 8          complaint does not allege [the defendant] failed
 9          or refused to ever disclose information to
10          plaintiff about her proceeds, but only that it
11          failed to disclose such information on the payoff
12          statements.
13
14 Jamison v. Bank of Am., N.A., 194 F. Supp. 3d 1022, 1029 (E.D.
15 Cal. 2016) (some alterations in Jamison) (some citations
16 omitted).  Finally,
17          neither the text of TILA, nor the implementing
18          regulation provide instruction regarding what
19          constitutes an "accurate payoff balance," though
20          the section-by-section analysis in the Federal
21          Register provides some additional context:
22
23               The Bureau does not believe further
24               regulation on procedures around payoff
25               balances is necessary.  A payoff balance
26               request is any request from a consumer, or
27               appropriate party acting on behalf of the
28               consumer, which inquires into the total
29               amount outstanding on the loan, or the amount
30               needed to pay off the loan.  While such
31               requests are most often made when a consumer
32               is refinancing their loan, payoff balance
33               requests are not limited to this
34               context. . . .  The Bureau is not making any
35               changes to the requirements of the accuracy
36               of the statement.  The Bureau believes payoff
37               statements should be issued according to the
38               best information available at the time. . . .
39
40          Mortgage Servicing Rules Under the Truth in
41          Lending Act (Regulation Z) V. Section-by-Section
42          Analysis, 78 Fed. Reg. 10902-01, 10957-10958
43          (Feb. 14, 2013).
44
45 Davidson v. PNC Bank, N.A., CAUSE NO. 1:16-cv-569-WTL-MPB, 2016
```

WL 7179371, at *3 (S.D. Ind. Dec. 9, 2016) (alterations in Davidson).

It is undisputed that Defendant sent Plaintiffs a copy of the Note, Security Instrument, and Payment History. Moreover, Defendant informed Plaintiffs that, "[t]he account is due for May 01, 2011, through October 01, 2015, monthly payments totaling $385,815.94. We've paid $38,243.66, toward property taxes and insurance." [10/13/15 Letter at 1.] The Payment History includes all of the information necessary for Plaintiffs to easily determine the total amount they would need to pay to satisfy their obligations. Further, Plaintiffs do not state that the Payment History is inaccurate. Instead, they allege that "[t]he Reg. Z requirement provides a borrower with an up-to-date and itemized payoff statement in order to allow the borrower to determine its validity and the feasibility of bringing the loan current," and that "[a] borrower cannot and is not required to discern this from a payment history provided by the loan servicer that may not include all fees charged to the account." [Mem. in Opp. at 8.] Plaintiffs do not provide any citation to support their position. Nor do Plaintiffs specifically allege that they were not informed about certain fees or that some fees were not included on the Payment History, and that information about these fees was needed to determine "the feasibility of bringing the loan current." See Mem. in Opp. at 8. In sum, Plaintiffs have

not established a concrete harm, and have therefore failed to show that they have standing to bring their Regulation Z claim. Accordingly, to the extent that Count I alleges a claim for violation of Regulation Z, it must be dismissed without prejudice.[8]

**III. Count II**

Count II states, in part, that "Defendants' acts and practices, as hereinabove alleged, constitute 'unfair' business acts under Bus. and Prof. Code § 17200, *et seq.*, in that said acts and practices offend public policy and are substantially injurious to Plaintiffs and all consumers." [Complaint at ¶ 89.] Accordingly, Count II is derivative of Count I. "[A] § 17200 claim must be brought 'by a person who has suffered injury in fact **and** has lost money or property as a result of the unfair competition.'" Sullivan v. Wash. Mut. Bank, FA, No. C-09-2161 EMC, 2009 WL 3458300, at *4 (N.D. Cal. Oct. 23, 2009) (emphasis in Sullivan) (some citations omitted) (quoting Cal. Bus. & Prof.

_____

[8] Insofar as Plaintiffs allege that Defendant failed to respond to their Regulation Z request by the statutory deadline, their argument is unavailing. A payoff statement must "be sent within a reasonable time, but in no case more than seven business days, after receiving written request from the consumer or any person acting on behalf of the consumer." § 1026.36(c)(3). However, "[w]hen a creditor, assignee, or servicer, as applicable, is not able to provide the statement within seven business days of such a request because a loan is in bankruptcy or foreclosure . . . the payoff statement must be provided within a reasonable time." Id. Plaintiffs do not allege that the time in which the Payment History and other information was provided was unreasonable.

1   Code § 17204).  Because Count I was dismissed, Count II must also

2   be dismissed.  However, for the same reasons as Count I, the

3   dismissal of Count II is without prejudice.

4                              **CONCLUSION**

5               On the basis of the foregoing, Defendant Wells Fargo

6   Home Mortgage's, doing business as America's Servicing Company,

7   Motion to Dismiss, filed on August 3, 2016, is HEREBY GRANTED IN

8   PART AND DENIED IN PART.  It is granted insofar as Plaintiffs

9   Clifford M. Anderson and Marlene J. Anderson's Complaint for

10  Damages and Equitable Relief is HEREBY DISMISSED.  It is denied

11  insofar as the dismissal is WITHOUT PREJUDICE.  If Plaintiffs

12  intend to file an amended complaint, they must do so by

13  **October 30, 2017**, and the amended complaint must cure the defects

14  identified in this Order and must also comply with Local Rule

15  220.

16              IT IS SO ORDERED.

17              DATED AT HONOLULU, HAWAII, September 20, 2017.
18
19
20
21                                   /s/ Leslie E. Kobayashi
22                                   Leslie E. Kobayashi
23                                   United States District Judge
24
25
26
27
28
29  CLIFFORD M. ANDERSON, ET AL. VS. WELLS FARGO HOME MORTGAGE, ET
30  AL., 2:16-CV-01783 LEK

                                  21